**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PETE CHALIF,

                                        Plaintiff,

         v.                                                         No. 03-CV-713
                                                                         (GTS/DRH)
DALE ARTUS, Superintendent; NANCY D. SMITH,
Senior Counselor and Chairperson of Media Review
Committee; EDNA AIKEN, Corrections Counselor;
BRYAN RANKIN, Corrections Counselor; TOM
MARCIL, Corrections Officer; MARITA RUMPH,
Corrections Counselor; and LARRY DEBEIC,
Chaplain,

                                        Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

PETE CHALIF
Plaintiff Pro Se
Riverview Transitional Residences
Building 110, Second Floor
Wards Island Complex
New York, New York 10035

HON. ANDREW M. CUOMO                    DAVID L. COCHRAN, ESQ.
Attorney General for the                        Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Pete Chalif ("Chalif"), formerly an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brought this action against six DOCS

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

employees and a chaplain[2] pursuant to 42 U.S.C. § 1983 asserting violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments.  Am. Compl. (Docket No. 5).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 96.  Chalif opposes the motion.  Docket No. 97.   For the following reasons, it is recommended that defendants' motion be granted.


## I. Background

The facts are related herein in the light most favorable to Chalif as the non-moving party. See subsection II(A) infra.  At all times relevant herein, Chalif was incarcerated at Clinton Correctional Facility ("Clinton").  Am. Compl. ¶ 4.

Upon arrival at Clinton, Chalif was a practicing member of the Church of Jesus Christ Christian and Aryan Nations.  Am. Compl. ¶ 12.  On July 19, 2001, a DOCS employee interviewed Chalif, who identified his religious affiliation as "Christian identity."  Id. ¶ 23. Chalif later learned that this was not a recognized affiliation.  See Artus Aff. (Docket No. 96-7) ¶ 6 ("'Christian Identity' and the 'Church of Jesus Christ Christian' are not on DOCS Division of Ministerial and Family Services' list of known faiths.").

On April 15, 2003, Chalif filed a grievance asking that his "Christian Identity" be a recognized religion by DOCS.  Am. Compl. ¶ 24; Docket No. 97-4 at 33.  The grievance was denied by the Superintendent and Chalif was advised to contact the clergy of his denomination and have him or her contact the coordinating chaplain at his facility.  Docket No. 97-4 at 38.  The grievance denial was appealed but was affirmed by the Central Office

---

[2] Ten other defendants were terminated from the action on August 1, 2003.  See Docket No. 5; First Docket Entry for Aug. 4, 2003.

Review Committee, which also advised Chalif to contact the facility chaplain about any other concerns.  Id. at 66.

On June 3, 2003, Chaliff wrote to defendant Debiec, a chaplain, and "submitted the Church of Jesus Christ Christian . . . prison ministries pamphlet as a confession of [his] religious faith . . . ."  Am. Compl. ¶ 30; see also Docket No. 97-4 at 41, 43.[3]  Debiec forwarded the material to the correctional facility's review committee[4] because he "found the material to be inflammatory, racist, subversive, and generally a threat to security."  Docket No. 97-4 at 73; see also Docket No. 97-4 at 42, 47, 71; Artus Aff. ¶ 7 ("[I]nmates are permitted scriptural and devotional books, as well as publications associated with their faith . . . ." but such documents must conform with guidelines).

Chalif responded by sending a letter to the media review committee explaining that White-Anglo-Saxons are the chosen ones and not those of Jewish or "other non-white" descent and accusing Debiec of illegally seizing his religious teachings in contravention of his constitutional rights.  Docket No. 97-4 at 45-46.  On June 6, 2003, Chalif also submitted a grievance seeking to have his religious materials returned.  Id. at 36.  The grievance was

---

[3] The pamphlet's introductory letter indicates that "under the present 'public policy,' most White Culture literature is forbidden prison inmates . . . ." Docket No. 96-4 at 1. Additionally, the pamphlet advances anti-Semitic and racist remarks detailing beliefs that "[t]he Jew is like a destroying virus that attacks our racial body to destroy our White culture and purity of our race," and "a battle [is] being fought this day between the children of darkness (today known as Jews) and the children of Light . . . , the White race . . . ." Id. at 2.  The enclosed religious teachings also condemned racially integrated cells stating that "it is a very serious and gross violation of Divine Law," and that although "[r]acial integration has been the stated 'public policy' of this government for some time . . . .," such mandatory cell assignments was sure to happen and would constitute "a very serious violation of the First Amendment rights of our White Aryan prisoners by restricting the practice of Identity Christianity."  Id. at 10.

[4] The media review committee was comprised of defendants Aiken, Rankin, Rumph, Marcil, and Smith.  Docket No. 97-4 at 62.

"closed and dismissed [as m]edia review has an appeal procedure which extends review to outside the facility." Id. at 37.  Chalif appealed the denial. Id. at 63-64.  On June 20, 2003, Chalif received a response from the media review committee denying the return of his religious material because "it advocates 'white supremacy' [and t]he views advocated . . . are inflammatory and the publication could, upon its admittance to a correctional facility, incite violence based on race."  Docket No. 96-8; see also Am. Compl. ¶ 34.[5]  Chalif unsuccessfully appealed the decision. Am. Compl. ¶¶ 35-40.  This action followed.


## II. Discussion

In his amended complaint, Chalif alleges that defendants violated his First Amendment rights by preventing the free exercise of his religion.  Additionally, Chalif contends that his Fourth Amendment rights were violated by the seizure of his religious pamphlet and materials by Dediec and the media review committee.[6]  Lastly, Chalif contends that his

---

[5] DOCS Directive No. 4572 (II) (C-E) clarifies that "publication[s] should not [1] incite violence based on race, religion . . . creed, or nationality . . . [2] advocate[] and present[] a clear and immediate risk of lawlessness, violence, anarchy, or rebellion against governmental authority . . . [or 3] incite disobedience towards law enforcement officers or prison personnel."  Docket No. 96-6 at 1; Artus Aff. ¶ 10.

[6] To the extent that Chalif claims a Fourth Amendment deprivation, such claims are meritless.  First, there is no dispute that Chalif voluntarily submitted the pamphlet to Dediec and it was not seized.  Even if a seizure occurred, however, the Fourth Amendment does not protect against searches and seizures of prison cells where the pamphlet here was kept. Hudson v. Palmer, 468 U.S. 517, 527-28 (1984).  Additionally, as to any Fourteenth Amendment due process claims for deprivation of Chalif's property, an inmate possesses a right not to be deprived of property without due process.  However, redress is unavailable for the deprivation of property if an adequate state court remedy was available to a plaintiff. Hudson v. Palmer, 468 U.S. 517, 533 (1984).  New York afford such a remedy through an Article 78 proceeding. See N.Y.C.P.L.R. §§ 7803, 7804; see also Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims.") (citations

Fourteenth Amendment equal protection rights were violated when defendants allow other supremacist groups to practice their religions but refuse to offer Chalif the same opportunity.  Defendants move for summary judgment on all claims.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio

---

omitted); Campo v. New York City Employees' Ret. Sys., 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 . . . provides a summary proceeding which can be used to review administrative decisions.").  New York law also provides that any individual, including an inmate, who seeks money damages against the State may commence an action for recovery only in the New York State Court of Claims.  See N.Y. Corr. Law § 24(2).  The Article 78 procedure remains available to Chalif.  Moreover, because Chalif sues for damages, he must pursue his claims against New York State in the Court of Claims pursuant to Corrections Law § 24.  Thus, the proper venue to litigate these claims is in the state courts. Adequate remedies are available to Chalif under available state law procedures.

Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment.

Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v.

Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must

afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185,

191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts

that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings

liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477

U.S. at 247-48.

### B. Personal Involvement

Defendants contend that Chalif has failed to establish the personal involvement of the

media review committee members.  "'[P]ersonal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright

v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d

880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because

they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

6

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Chalif contends that the media review committee's possession of and failure to return his religious materials constituted a violation of his First and Fourth Amendment rights because he could not practice his religion without the materials.  Viewing the evidence in the light most favorable to Chalif, defendants' actions as committee members constitute the direct cause for Chalif not being able to practice his religion whether the committee's actions accorded with DOCS policy or not.  Given such alleged direct involvement through the decision to retain possession of the pamphlet, a question of fact has been raised whether each committee member directly participated and was directly involved in an constitutional deprivation.

Accordingly, defendants' motion should be denied on this ground.


C. Debeic

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation

was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted).  "[A] prison chaplain, even if a full-time state employee, is not a state actor when he engages in inherently ecclesiastical functions (that is, when he performs spiritual duties as a leader in his church)." <u>Montano v. Hedgepeth</u>, 120 F.3d 844, 851 (8th Cir. 1997).  Such duties are separate and apart from "the administrative and managerial tasks . . . [Debeic was] required to perform as prison chaplain, which clearly would be fairly attributable to the state . . . ." <u>Id.</u> (<u>citing</u> <u>Polk County v. Dodson</u>, 454 U.S. 312, 324-25 (1981)).

In this case, Debeic was asked to review Chalif's religious affiliation as they appeared in the prison records.  "DOCS Directive No. 4202 spells out certain aspects of the prison's religious program . . ." including the fact that prisoners may change their listed religious affiliations after consultation with the spiritual advisors on staff.  <u>Jackson-Bey v. Hanslmaier</u>, 115 F.3d 1091, 1093 (2d Cir. 1997).  Such changes to the facility records pursuant to a DOCS directive are administrative and not ecclesiastical tasks.  Thus, in evaluating Chalif's pamphlet and sending it to the media review committee, Debeic was acting in an administrative role and under the color of state law.

Accordingly, defendants' motion should be denied on this ground.


### D. First Amendment

The First Amendment guarantees the right to the free exercise of religion.  <u>See</u> <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 719 (2005).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. 2003) (<u>citing</u> <u>Pell v. Procunier</u>, 417

8

U.S. 817, 822 (1974)).   This right is not absolute or unbridled, and even if it "impinges on

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  In assessing the

reasonableness of the regulation, several factors are considered.  Generally, for an

infringement to be reasonable

> there must be a 'valid, rational connection' between the prison
> regulation and the legitimate governmental interest; . . . the
> governmental objective must be a legitimate and neutral one; . . .
> there are alternative means of exercising the right that remain open
> to prison inmates; . . . assert[ion of the] right w[ould] have a
> significant 'ripple effect' on fellow inmates or on prison staff; . . .
> [and there is an] absence of ready alternatives . . . .

Id. at 89-91.

In this case, defendants concede that there is a question of fact whether Chalif's

religious beliefs in the Church of Jesus Christ Christian were sincerely held.  Defs. Mem. of

Law (Docket No. 96-11) at 7.  However, Chalif has asserted nothing more than conclusory

statements to support his claim that his religious beliefs were substantially burdened by the

DOCS policy.  Chalif has offered no evidence that his ability to pray, worship, congregate,

proselytize, or otherwise exercise his beliefs was affected in any way.  This is insufficient to

withstand a motion for summary judgment.

To the extent that such a burden can be found, Chalif still fails to demonstrate a First

Amendment violation because defendants' actions were undertaken for legitimate

penological purposes.  [Other circuits have found the prohibition of violent and hateful

literature to be reasonably related to legitimate penological interests.  See Chriceol v.

Phillips, 169 F.3d 313, 316 (5th Cir.1999) (upholding a state "policy of withholding mail that

advocates racial, religious, or national hatred that creates a serious danger of violence");

9

Murphy v. Missouri Dep't of Corr., 814 F.2d 1252, 1257 (8th Cir.1987) (state regulation banning racist publication constitutional provided that it is "limited to those materials that advocate violence or that are so racially inflammatory as to be reasonably likely to cause violence at the prison"); McCabe v. Arave, 827 F.2d 634, 638 (9th Cir.1987) (stating that materials that advocate violence or that are so racially inflammatory as to be reasonably likely to cause violence "can certainly be banned").  Review of the Church of Jesus Christ Christian literature shows an open advocacy of racism and anti-Semitism.  Docket No. 96-4 at 2, 10.  It also shows the Church of Jesus Christ Christian's awareness that such ideologies are prohibited in prisons, as evidenced by the disclaimer in the introductory letter.  Docket No. 96-4 at 1.  Confiscation of such materials was clearly within the ambit of legitimate penological interests.

Moreover, even without relying on the holdings of other circuits, such a confiscation was also reasonable in light of the Turner factors.  Confiscation was aimed at preventing inmate-on-inmate violence and maintaining safety and institutional security.  The media review committee directive and subsequent confiscation constituted valid support of the goals for institutional integrity.  Additionally, Chalif indicates that the basis for the Church of Jesus Christ Christian's teachings was contained in the Bible.  Pl. Mem. of Law (Docket No 97-3) at 3-4.  Thus, there existed an alternative and original text for Chalif to read the teachings of his religion.


Furthermore, allowing the materials to remain in the general prison population posed a serious risk of harm to both inmates and staff as the writings promote and glorify hate and bigotry.  The animus advocated by the organization was recognized by Chalif who

10

continually refers to the organization as a white supremacist group in his submissions. Insulating such inflammatory materials presented the best option for preventing a ripple effect of violence. There also was no ready alternative to this materials, which legitimized defendants' confiscation. Therefore, under the Turner factors, defendants' confiscation of the materials was reasonable notwithstanding any arguable First Amendment rights Chalif possessed.

Accordingly, defendants' motion for summary judgment as to Chalif's First Amendment claims should be granted.

### E. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Vegas v. Artus, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently . . . and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Tatta v. Wright, 616 F. Supp. 2d 308, 319 (N.D.N.Y. 2007) (citations omitted). Moreover, when the claim is being brought by a "class of one," the plaintiff must allege intentional and different treatment "and that

11

there is no rational basis for the difference in treatment."  Id. (citations omitted).

Chalif asserts that defendants allowed black supremacist groups to have religious literature but refused to allow Chalif and other white supremacist groups to have their literature.  However, Chalif has failed to show how any of the defendants acted with discriminatory animus toward him.  Moreover, defendants' actions in reviewing the materials and determining that the materials failed to comply with the DOCS directive constituted a rational basis for any difference in treatment as Chalif's materials were avowedly racist and anti-Semitic.

Accordingly, defendants' motion for summary judgment as to Chalif's equal protection claim should be granted.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 96) be **GRANTED** in all respects as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  October 15, 2009
      Albany, New York

_David R. Homer_
United States Magistrate Judge

12